PHILLIP A. TALBERT
United States Attorney
MICHAEL D. ANDERSON
ROSANNE L. RUST
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:20-cr-221 WBS |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: JULY 25, 2022 |
| ARTURO PACHECO, | TIME: 9:00 A.M. |
| Defendant. | COURT: Hon. WILLIAM B. SHUBB |

## I.    **INTRODUCTION**

A.    **Scope of Agreement.**

The Indictment in this case charges the defendant with violations of Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242 (Counts One and Two), and Falsification of Records in Federal Investigation, in violation of 18 U.S.C. § 1519 (Counts Three and Four). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

B.    **Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the

PLEA AGREEMENT                                    1

1    discretion of the Court, and the Court may take into consideration any and all facts and circumstances
2    concerning the criminal activities of defendant, including activities which may not have been charged in
3    the Indictment.  The Court is under no obligation to accept any recommendations made by the
4    government, and the Court may in its discretion impose any sentence it deems appropriate up to and
5    including the statutory maximum stated in this plea agreement.

6         If the Court should impose any sentence up to the maximum established by the statute, the
7    defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all
8    of the obligations under this plea agreement.  The defendant understands that neither the prosecutor,
9    defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will
10   receive.

11               **II.**     **DEFENDANT'S OBLIGATIONS**

12       **A.**    **Guilty Plea.**

13        The defendant will plead guilty to each Count in the Indictment.  The defendant agrees that he is
14   in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as
15   Exhibit A are accurate.

16        The defendant agrees that this plea agreement will be filed with the Court and become a part of
17   the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his
18   pleas should the Court not follow the government's sentencing recommendations.

19        The defendant agrees that the statements made by him in signing this Agreement, including the
20   factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by
21   the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a
22   guilty plea pursuant to this Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f)
23   and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this
24   Agreement generally.

25       **B.**    **Remand.**

26        The defendant acknowledges that to remain out of custody after the entry of his guilty plea he
27   must establish by clear and convincing evidence that he is not likely to flee or pose a danger to the safety
28   of another person or the community if released.  18 U.S.C. § 3143.

PLEA AGREEMENT           2

**C.   Restitution.**

The defendant agrees the conduct to which he is pleading guilty requires mandatory restitution pursuant to the Mandatory Restitution Act, 18 U.S.C. § 3663, and agrees to pay restitution to the victims in the factual basis or their estates in an amount between 1,000 and 2,000,000 dollars per victim. Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court.

Defendant agrees that all criminal monetary penalties imposed by the court, including restitution, will be due in full immediately at time of sentencing and subject to immediate enforcement by the government. Defendant agrees that any payment schedule or plan set by the court is merely a minimum and does not foreclose the United States from collecting all criminal monetary penalties at any time through all available means.

Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

Defendant shall not sell, encumber, transfer, convey, or otherwise dispose of any of his assets without prior written consent of the United States Attorney, except that the defendant may sell, transfer or convey personal property (including used vehicles and personal items, but not financial instruments, ownership interests in business entities or real property) with an aggregate value of less than $5,000.

**D.   Fine.**

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is his burden to affirmatively prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offenses.

**E.   Special Assessment.**

The defendant agrees to pay a special assessment of $400 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is

1 voidable at the option of the government if he fails to pay the assessment prior to that hearing.

2       **F.**   **Violation of Plea Agreement by Defendant/Withdrawal of Pleas.**

3         If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw

4 his plea, this plea agreement is voidable at the option of the government.  If the government elects to

5 void the agreement based on the defendant's violation, the government will no longer be bound by its

6 representations to the defendant concerning the limits on criminal prosecution and sentencing as set

7 forth herein.  A defendant violates the plea agreement by committing any crime or providing or

8 procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in

9 any litigation or sentencing process in this case, or engages in any post-plea conduct constituting

10 obstruction of justice.  Varying from stipulated Guidelines application or agreements regarding

11 arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through

12 counsel, also constitutes a violation of the plea agreement.  The government also shall have the right:

13 (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any

14 counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would

15 otherwise be barred by this plea agreement.  The defendant shall thereafter be subject to prosecution for

16 any federal criminal violation of which the government has knowledge.  The decision to pursue any or

17 all of these options is solely in the discretion of the United States Attorney's Office.

18         By signing this plea agreement, the defendant agrees to waive any objections, motions, and

19 defenses that the defendant might have to the government's decision.  Any prosecutions that are not

20 time-barred by the applicable statute of limitations as of the date of this plea agreement may be

21 commenced in accordance with this paragraph, notwithstanding the expiration of the statute of

22 limitations between the signing of this plea agreement and the commencement of any such prosecutions.

23 The defendant agrees not to raise any objections based on the passage of time with respect to such

24 counts including, but not limited to, any statutes of limitation or any objections based on the Speedy

25 Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as

26 of the date of this plea agreement.  The determination of whether the defendant has violated the plea

27 agreement will be under a probable cause standard.

28         In addition, (1) all statements made by the defendant to the government or other designated law

PLEA AGREEMENT           4

1 | enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,
2 | whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or
3 | administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no
4 | claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal
5 | Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by
6 | the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.
7 | By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

8 |       **G.**    **Asset Disclosure.**

9 |       The defendant agrees to make a full and complete disclosure of his assets and financial
10 | condition, and will complete the United States Attorney's Office's "Authorization to Release
11 | Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the
12 | defendant's change of plea, including supporting documentation.  The defendant also agrees to have the
13 | Court enter an order to that effect.  The defendant understands that if he fails to complete truthfully and
14 | provide the described documentation to the United States Attorney's Office within the allotted time, he
15 | will be considered in violation of the agreement, and the government shall be entitled to the remedies set
16 | forth in section II.F above.

17 |       Defendant expressly authorizes the United States to immediately obtain a credit report to
18 | evaluate defendant's ability to satisfy any monetary penalty imposed by the court.  Defendant also
19 | authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held
20 | by the U.S. Probation Office.

21 |       **III.**    **THE GOVERNMENT'S OBLIGATIONS**

22 |       **A.**    **Dismissals/Other Charges.**

23 |       The government agrees not to bring any other charges arising from the conduct outlined in the
24 | Factual Basis attached hereto as Exhibit A.

25 |       **B.**    **Recommendations.**

26 |       1.    Incarceration Range.

27 |       The government will recommend that the defendant be sentenced to no more than 151
28 | months in prison.

1    2.    Acceptance of Responsibility.

2    The government will recommend a two-level reduction for acceptance of responsibility if

3  the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. §

4  3E1.1.  This includes the defendant timely meeting with and assisting the probation officer in the

5  preparation of the pre-sentence report, so that there are no delays in the pre-sentence report prepartion,

6  being truthful and candid with the probation officer, and not otherwise engaging in conduct that

7  constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the

8  pre-sentence report or during the sentencing proceeding.

9    **C.**    **Use of Information for Sentencing.**

10    The government is free to provide full and accurate information to the Court and Probation,

11  including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate

12  statements or arguments by the defendant, his attorney, Probation, or the Court.  The defendant also

13  understands and agrees that nothing in this Plea Agreement bars the government from defending on

14  appeal or collateral review any sentence that the Court may impose.

15    **IV.**    **ELEMENTS OF THE OFFENSE**

16    At a trial, the government would have to prove beyond a reasonable doubt the following

17  elements of the offenses to which the defendant is pleading guilty:

18    1.    **Counts One and Two, Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242:**

19

20  First, the defendant was acting under color of law;

21  Second, the defendant deprived the victim (Victim 1 in Count 1 and Victim 2 in Count 2) of a

22  right which is secured or protected by the Constitution and laws of the United States—in this case, the

23  right to be free from the use of unreasonable force under the Eighth Amendment;

24  Third, the defendant acted willfully, intending to deprive the victim of this right;

25  Fourth, the victim suffered bodily injury from the defendant's act; and

26  Fifth, the act occurred within the State of California.

27    2.    **Counts Three and Four, Falsification of Records in Federal Investigation in violation of 18 U.S.C. § 1519:**

28  First, the defendant knowingly altered, destroyed, concealed, or falsified a record, document or

1  tangible object; and

2       Second, the defendant acted with the intent to impede, obstruct or influence an actual or

3  contemplated investigation of a matter within the jurisdiction of any department or agency of the United

4  States, to wit, the United States Department of Justice.

5       The defendant fully understands the nature and elements of the crimes charged in the Indictment

6  to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with

7  his attorney.

8                            V.       **MAXIMUM SENTENCE**

9       **A.    Maximum Penalty.**

10      The maximum sentence that the Court can impose as to Counts One and Two is 10 years in

11  prison per count, a fine of up to $250,000 per count, a three-year period of supervised release per count

12  and a special assessment of $100 per count.  As to Counts Three and Four, the maximum sentence the

13  Court can impose is 20 years in prison per count, a fine of up to $250,000 per count, a three year period

14  of supervised release per count and a special assessment of $100 per count.  The Court can impose a

15  consecutive sentence where the total maximum prison term would be 60 years in prison, and a fine of up

16  to $1,000,000.

17      By signing this plea agreement, the defendant also agrees that the Court can order the payment of

18  restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees, as noted

19  above, that he will not attempt to discharge in any present or future bankruptcy proceeding any

20  restitution imposed by the Court.

21      **B.    Violations of Supervised Release.**

22      The defendant understands that if he violates a condition of supervised release at any time during

23  the term of supervised release, the Court may revoke the term of supervised release and require the

24  defendant to serve up to two additional years imprisonment.

25                           VI.       **SENTENCING DETERMINATION**

26      **A.    Statutory Authority.**

27      The defendant understands that the Court must consult the Federal Sentencing Guidelines and

28  must take them into account when determining a final sentence.  The defendant understands that the

PLEA AGREEMENT                              7

Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.**     **Stipulations Affecting Guideline Calculation.**

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

As to **Count 1 (and Count 3)**:

| Offense Characteristic | Guidelines Section | Offense Level Adjustment |
|---|---|---|
| Base offense level | 2H1.1(a)(1)/2A2.2 | 14 |
| Bodily Injury (pepper spraying Victim 1 in the face at close range) | 2A2.2(b)(3)(A) & 1B1.1, App. Note 1 | 3 |
| Color of Law | 2H1.1(b)(1)(B) | 6 |
| Vulnerable Victim (Victim 1 was an EOP inmate) | 3A1.1(b)(1) | 2 |
| Restraints (locked in a prison cell) | 3A1.3 | 2 |
| Obstruction | 3C1.1 | 2 |
|  |  | **29** |

Count 3 groups with Count 1 and is accounted for in the two-level obstruction enhancement. *See* U.S.S.G. § 3C1.1, App. Note 8.

///

///

///

///

///

///

As to **Count 2 (and Count 4)**:

| Offense Characteristic | Guidelines Section | Offense Level Adjustment |
|---|---|---|
| Base offense level | 2H1.1(a)(1)/2A2.2 | 14 |
| Permanent or Life-Threatening Injury (pulling Victim 2's legs out from underneath him over a concrete floor while Victim 2's hands were handcuffed behind his back so there was no way for him to avoid smashing his head, resulting in a substantial risk of permanent or life threatening injury) | 2A2.2(b)(3)(A) & 1B1.1, App. Note 1 | 7 |
| Color of Law | 2H1.1(b)(1)(B) | 6 |
| Vulnerable Victim (Victim 2 was an EOP inmate) | 3A1.1(b)(1) | 2 |
| Restraints (handcuffed hands behind Victim 2's back) | 3A1.3 | 2 |
| Obstruction | 3C1.1 | 2 |
| | | 33 |

Count 4 groups with Count 2 and is accounted for in the two-level obstruction enhancement. *See* U.S.S.G. § 3C1.1, App. Note 8.

**Grouping:**

29 is four levels less than 33. As a result, one unit is counted for Group 1 and one unit for Group 2 for a total of two units. U.S.S.G. § 3D1.4. Two units results in a two-level increase to the offense level of the group with the highest offense level. *Id.* Therefore, the offense level becomes **35.**

**Acceptance of Responsibility:**

See paragraph III.B.2. The parties further agree that the defendant does not qualify for a third-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b). The government expended substantial resources preparing for trial that included conducting pre-trial interviews of almost all of the likely witnesses, drafting jury instructions and other trial documents, identifying exhibits, and other trial preparation.

**Criminal History:**

The parties estimate, but do not stipulate, that the defendant's criminal history category will be I.

///
///

**Sentencing Range:**

Based on the stipulations above and the defendant's estimated criminal history category, the parties estimate that the Guidelines range will be **135 to 168 months**. The defendant understands that if the criminal history category differs from the parties' estimate, his Guidelines sentencing range may differ from that set forth here.

**Departures or Other Enhancements or Reductions:**

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on post-plea obstruction of justice (§3C1.1). Both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines, or any deviance or departure from the Sentencing Guidelines.

The defendant may recommend to the Court, through a variance only under 18 U.S.C. § 3553(a), that he should receive a sentence of no less than 121 months in prison. The government may oppose that recommendation. The defendant further acknowledges that if he requests or suggests in any manner a sentence of less than 121 months in prison, either directly or through counsel, that he will be in violation of the plea agreement. The government's remedies and remaining obligations in this agreement shall be as outlined in paragraph II.F, above. The government likewise retains the right to argue for a sentence of 151 months even if the Court calculates the guidelines in a manner different than is set forth in the stipulations and estimates above.

## VII.    WAIVERS

### A.    Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

PLEA AGREEMENT                                  10

1   **B.**     **Waiver of Appeal and Collateral Attack.**

2          The defendant understands that the law gives the defendant a right to appeal his guilty plea,

3   conviction, and sentence.  The defendant agrees as part of his pleas, however, to give up the right to

4   appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not

5   exceed the statutory maximums for the offenses to which he is pleading guilty.  The defendant

6   understands that this waiver includes, but is not limited to, any and all constitutional and/or legal

7   challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which

8   defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts

9   attached to this agreement is insufficient to support the defendant's pleas of guilty.  The defendant

10  specifically gives up the right to appeal any order of restitution the Court may impose.

11         Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if

12  one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the

13  statutory maximum; and/or (2) the government appeals the sentence in the case.  The defendant

14  understands that these circumstances occur infrequently and that in almost all cases this Agreement

15  constitutes a complete waiver of all appellate rights.

16         In addition, regardless of the sentence the defendant receives, the defendant also gives up any

17  right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any

18  aspect of the guilty pleas, convictions, or sentence, except for non-waivable claims.

19         Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever

20  attempts to vacate his pleas, dismiss the underlying charges, or modify or set aside his sentence on any

21  of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.F

22  herein.

23  **C.**     **Waiver of Attorneys' Fees and Costs.**

24         The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-

25  119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the

26  investigation and prosecution of all charges in the above-captioned matter and of any related allegations

27  (including without limitation any charges to be dismissed pursuant to this plea agreement and any

28  charges previously dismissed).

PLEA AGREEMENT                                    11

1    **VIII.    ENTIRE PLEA AGREEMENT**

2         Other than this plea agreement, no agreement, understanding, promise, or condition between the

3    government and the defendant exists, nor will such agreement, understanding, promise, or condition

4    exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and

5    counsel for the United States.

6    **IX.    APPROVALS AND SIGNATURES**

7    **A.    Defense Counsel:**

8         I have read this plea agreement and have discussed it fully with my client.  The plea agreement

9    accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to

10   plead guilty as set forth in this plea agreement.

11   Dated:  July 21, 2022

12                                                       DAVID FISCHER
                                                         Attorney for Defendant
13

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21

22

23

24

25

26

27

28

PLEA AGREEMENT                              12

1 **B.    Defendant:**

2      I have read this plea agreement and carefully reviewed every part of it with my attorney.  I

3 understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully

4 understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my

5 case.  No other promises or inducements have been made to me, other than those contained in this plea

6 agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.

7 Finally, I am satisfied with the representation of my attorney in this case.

8 Dated: July 21, 2022

9                                    ARTURO PACHECO
                                   Defendant
10

11 **C.    Attorney for United States:**

12      I accept and agree to this plea agreement on behalf of the government.

13 Dated: July 21, 2022                PHILLIP A. TALBERT
                                   United States Attorney
14

15

16                                    MICHAEL D. ANDERSON
                                   ROSANNE L. RUST
17                                    Assistant United States Attorneys

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT                        13

1        **EXHIBIT "A"**

2        **Factual Basis for Pleas**

3        In 2016, the defendant Arturo Pacheco was a California Department of Corrections and
Rehabilitation (CDCR) correctional officer.  Pacheco worked at CSP-Sacramento, a prison located in
4   Folsom, California.

5        Before becoming a CDCR correctional officer, PACHECO attended the CDCR Academy for
cadets.  While a cadet, PACHECO received training on several topics including, but not limited to, what
6   "use of force" is, when it is appropriate, and how and why to properly write truthful and complete
reports.  PACHECO also learned that the CDCR has a zero tolerance policy for what is known as the
7   "code of silence" or the "Green Wall," which is the idea that correctional officers will not inform
supervisors or authorities of misconduct committed by another correctional officer, but will instead
8   protect each other.

9        The Bill of Rights to the United States Constitution guarantees many individual rights and
liberties.  Investigations into potential federal civil rights violations, including offenses that involve
10   violence committed "under the color of law," fall within the jurisdiction of the Federal Bureau of
Investigation ("FBI") and the U.S. Department of Justice.  Attempts to obstruct known or potential
11   federal investigations into color of law violations can themselves constitute violations of federal
criminal law.

12
         **The September 15, 2016, Assault (Count 2)**
13
         Despite his training, on September 15, 2016, PACHECO willfully and intentionally injured
14   Victim 2, an inmate at CSP-Sacramento, by using excessive or unnecessary force.  PACHECO then
wrote a false report to hide his conduct and influenced his partner, Ashely M. Aurich, *charged*
15   *elsewhere in case number 2:20-cr-219 WBS*, to do the same.

16        Specifically, PACHECO's sergeant, Sergeant 1, told PACHECO to move Victim 2 from a cell in
Building 6A to a cell in Building 7A.  PACHECO told Aurich, and they walked to Building 6A to get
17   Victim 2.  When they arrived, Correctional Officer 2 was there to assist if necessary.  PACHECO
handcuffed Victim 2's hands behind Victim 2's back while Victim 2 complained about the move.  The
18   three correctional officers began to escort Victim 2 on foot to Building 7A.

19        During the escort, PACHECO positioned himself on the left side of Victim 2, holding his left
arm.  Aurich was on the right side of Victim 2, and Correctional Officer 2 was following closely behind
20   PACHECO and Aurich.  When they arrived at Building 7A, the building's control booth officer let them
inside.  Shortly after entering and just inside the rotunda area, Victim 2 stopped walking and stiffened
21   his torso.  In response, PACHECO released his grip on Victim 2's left arm, bent down and wrapped his
arms around Victim 2's legs.  While Victim 2 still had his hands handcuffed behind his back,
22   PACHECO lifted Victim 2's legs and pulled them quickly backwards towards him.  PACHECO's use of
force caused Victim 2 to fall violently forward to the concrete floor where Victim 2 struck his face and
23   upper torso.  The impact of Victim 2's head striking the concrete floor caused Victim 2 to break his jaw
and several teeth.  Victim 2 also injured his right shoulder in a failed attempt to cushion his fall as his
24   hands were still handcuffed behind his back.

25        After Victim 2 crashed to the floor, Aurich sounded the alarm, and several other correctional
officers, including Sergeant 1 and Correctional Officer 4, responded to Building 7A.  Correctional
26   Officer 4 relieved PACHECO and he and Correctional Officer 5 took Victim 2 to the medical treatment
area of CSP-Sacramento.  Medical staff attended to Victim 2 and determined Victim 2 needed to be sent
27   to UC Davis Medical Center to receive more treatment for his injuries than they could offer, including
fixing Victim 2's broken jaw and repairing a through and through wound in Victim 2's chin.

28

PLEA AGREEMENT                              A-1

1    At UC Davis Medical Center, Victim 2 received medical care, underwent medical procedures, and appeared to be medically stable. However, approximately two days later, while taking a shower in
2  his hospital room, Victim 2 suffered a pulmonary embolism and, despite the efforts of medical staff to revive him, died.

3
### The September 15, 2016, Cover-up (Count 4)
4
5    After PACHECO was relieved, Sergeant 1 sent out an email to all of the officers s/he observed in Building 7A during the incident. This indicated they needed to write their crime incident reports on
6  CDCR form 837. To write his report, PACHECO returned to Building 7A where he sat in an office at a computer, across from Aurich. PACHECO told Aurich they were going to keep their reports "in house,"
7  meaning they would draft and submit consistent, false descriptions of what action Victim 2 took to supposedly justify PACHECO's use of force and they would lie about the use of force PACHECO
8  actually used. PACHECO and Aurich then lied about how Victim 2 allegedly stopped moving, then spun to his left and lunged forward, and supposedly broke free of PACHECO's escort. They then wrote
9  that PACHECO took Victim 2 to the ground in a controlled manner, when, in truth, PACHECO swept Victim 2's legs out from underneath him, causing him to smash his head against the concrete.

10    PACHECO also told Aurich he was leaving Correctional Officer 2 out of his report, and she should do the same in hers. The reason the two of them left Correctional Officer 2 out of their reports
11  was to prevent Correctional Officer 2 from submitting an accurate report regarding PACHECO's assault on Victim 2, which would describe PACHECO's use of excessive or unnecessary force and how Victim
12  2 was not actively resisting in a manner that would have warranted PACHECO's conduct.

13    In fact, Correctional Officer 2 did draft a report shortly after the assault, and in his report, Correctional Officer 2 did document Victim 2's actions and PACHECO's use of excessive or
14  unnecessary force against Victim 2. Correctional Officer 2 never submitted his draft report, however, because PACHECO told Correctional Officer 2 not to. Sergeant 1 also never followed up with
15  Correctional Officer 2 to obtain a copy of his report although part of the response supervisor's duties are to ensure that each correctional officer who witnessed "use of force" or used force submits an accurate
16  report describing why force was used and what type of force was used, among other things. Sergeant 1 also told Correctional Officer 4 to leave Correctional Officer 2 out of Correctional Officer 4's report
17  because Correctional Officer 2 and PACHECO were involved in a "use of force" incident the week prior and it looked bad to have them involved in another incident so close in time. Correctional Officer 4
18  followed this order without question.

19    PACHECO also called Correctional Officer 4 after the incident with Victim 2 and PACHECO told Correctional Officer 4 to keep Correctional Officer 2 out of Correctional Officer 4's report.
20  PACHECO told Correctional Officer 4 that Victim 2 "pissed [him] off", so PACHECO "dumped" Victim 2.
21
22    On or about September 16, 2016, PACHECO signed and submitted his final, false report regarding the incident with Victim 2.

23
### The Discovery of the May 19, 2016, OC Spray Assault and False Report (Counts 1 and 3)
24    After Victim 2 died, an investigation was conducted into the officers' conduct. During the course of the investigation, investigators uncovered another assault and false report by PACHECO.
25
26    On or about May 19, 2016, PACHECO found Victim 1 in his cell with a broken window. Rather than try to clean up the cell and issue a rules violation to Victim 1 for breaking the glass, PACHECO
27  instead told Victim 1 to move toward the window of his cell, turn around, and open his eyes. When Victim 1 complied with that order, PACHECO sprayed Victim 1 with OC (pepper) spray at a range of
28  approximately three feet. Victim 1 was not resisting in any way and had been fully compliant; therefore, any use of force at that time was unnecessary and unlawful.

PLEA AGREEMENT                          A-2

1    After spraying Victim 1, an alarm sounded.  Correctional Officer 6 responded to Victim 1's cell.
     When Correctional Officer 6 arrived, Correctional Officer 6 saw Victim 1's face covered in orange OC
2    spray, and he could smell OC spray in the air.  Correctional Officer 6 also saw Victim 1 struggling in
     pain.  The OC spray caused Victim 1 to experience an extreme burning sensation, physical pain and
3    temporary blindness, and Victim 1 had to be medically evaluated for any damage to his eyes.

4         After leaving work that evening, PACHECO sent a copy of his false draft incident report to a
     friend via text message, and he bragged about "fuck[ing] up" Victim 1.  In his draft report, PACHECO
5    lied by stating that Victim 1 was threatening to kill himself and threatening PACHECO and that is why
     PACHECO sprayed Victim 1 with OC spray.  PACHECO also lied about spraying Victim 1 with OC
6    spray from at least 6 feet away, which is the recommended distance, to avoid causing soft tissue damage
     to the eyes.

7

8         PACHECO continued with additional text messages to his friend remarking how "funny" his
     violence towards Victim 1 was and that PACHECO "just wanted to spray him [Victim 1]", so he
     "[f]ucken hosed him".  PACHECO further stated that "[i]t's all about how u write ur report" and "plus
9    ur partners have ur back."  As PACHECO remarked, "[b]lood, broken glass, n just u n ur partners. . . .
     Green light!"

10

11        On or about May 20, 2016, PACHECO signed and submitted his final, false report regarding the
     incident with Victim 1.

12        The conduct set forth above is not meant to be exhaustive and is merely an example of
     PACHECO's conduct.

13

14        I have reviewed the entire factual basis in Exhibit A above and, as far as my own conduct is
     concerned, I adopt it as my own true statement.

15

16   DATED: July 21, 2022                    _____
                                             ARTURO PACHECO
17                                           Defendant

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT                          A-3