DAVID D. FISCHER, SBN 224900
LAW OFFICES OF DAVID D. FISCHER, APC
5701 Lonetree Blvd., Suite 312
Rocklin, CA 95765
Telephone:   (916) 447-8600
Facsimile:   (916) 930-6482
Email:   david.fischer@fischerlawoffice.com

Attorney for Defendant
ARTURO PACHECO

# UNITED STATES OF DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>ARTURO PACHECO,<br><br>    Defendant. | Case No.:  2:20-CR-00221-WBS<br><br>**DEFENDANT ARTURO PACHECO'S SENTENCING MEMORANDUM** |

## I.   INTRODUCTION

Arturo Pacheco is 40 years old, is married, and is the father of the three children. He has no prior criminal record. As of 2016 when this case occurred, he had spent the majority his adult life serving our country in the United States Military, earning the rank of Sergeant (E5). He served during times of war in Iraq and Afghanistan. Mr. Pacheco was deployed in Iraq during Operation Iraqi Freedom and in Afghanistan during Operation Enduring Freedom. As outlined in the probation report in paragraph 127, Mr. Pacheco suffered from Post-Traumatic Stress Disorder (PTSD) as a result of experiences he endured while serving in the military during the Gulf War Era, specifically while deployed in Iraq from 2007 to 2008 and in Afghanistan from 2012 to 2013. He was not diagnosed with

PTSD until 2019. Since 2019, Mr. Pacheco has participated in treatment through the Veteran's Administration. He has also participated in counseling while on pretrial services supervision. As outlined in his letter to the Court, Mr. Pacheco is extremely remorseful for his conduct. Although probation did not recommend a variance, the defense agrees with probation's observation that the defendant's service and heroic acts while in the military, along with his diagnosis of PTSD with symptoms may have contributed to Mr. Pacheco's criminal conduct are present to an unusual degree, and may warrant consideration of a downward variance. Mr. Pacheco acknowledges what he did was wrong, accepts total responsibility for his actions, and is remorseful for his conduct.

The defense submitted 26 letters of support from his family, friends, military commanders, and past coworkers. The people who know him best confirm that Mr. Pacheco is a devoted family man, and a hard worker. A person who is willing to help anyone, and someone who served our country with pride and loyalty. He is described as honorable, selfless, loving, and considerate. These attributes most accurately describe Mr. Pacheco's overall character. His actions in this case were inconsistent with his core values, and he will not find himself apart of the criminal justice system in the future.

The advisory Guidelines range is 135 to 168 months of imprisonment. The government has recommended a sentence of 151 months. For the reasons stated in this memorandum, the defendant requests that he be sentenced to a term of imprisonment of 121 months.

## II. A DOWNWARD VARIANCE IS APPROPRIATE UNDER 18 U.S.C. § 3553(A)

In <u>Booker</u> the Supreme Court held that district courts must consider the guideline range as advisory, not mandatory, and that they must also consider the other directives set forth in 18 U.S.C. § 3553(a). <u>United States v. Booker</u>, 543 U.S. 220 (2005).

Section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2):

**DEF. ARTURO PACHECO'S SENTENCING MEMO**

(a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");

(b) deterrence;

(c) incapacitation ("to protect the public from further crimes"); and

(d) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." The parsimony provision is not just another factor to be considered along with the others set forth in Section 3553(a), it sets an independent limit on the sentence a court may impose. Kimbrough v. United States, 552 U.S. 85, 101 (2007) (referring to the clause as an "overarching provision" that, post Booker, "permits the court to tailor the sentence" to the individual defendant and crime in light of the goals of the Sentencing Reform Act of 1984).

In determining if the sentence is minimally sufficient to comply with Section 3553(a)(2) purposes of sentencing, a court should consider several factors listed in Section 3553(a). These are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the kinds of sentence available;

(3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;

(4) the need to avoid unwarranted sentencing disparity; and

(5) the need to provide restitution where applicable.
18 U.S.C. § 3553(a)(l), (a)(3), (a)(5)-(7).

Neither the statute itself nor <u>Booker</u> suggests that any one of these factors is to be given greater weight than any other factor. However, it is important to remember that all factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

### A. The Nature and Circumstances of the Offense and the Offender Warrant a Variance to 121 Months

*Military Service and Mental and Emotional Condition*

As outlined in paragraph 80 of the PSR, in 2002, at age 20, Mr. Pacheco joined the United States Army and was enlisted in active duty until he honorably discharged in 2005. He enlisted in the California National Guard, and served from 2006 until he was honorably discharged in 2013. During that time, he was deployed overseas. He was in Korea in 2002, in Iraq from 2007 to 2008, and in Afghanistan from 2012 to 2013. Mr. Pacheco was never subject to any discipline under the Uniform Code of Military Justice.

As confirmed in paragraph 91 of the PSR, Mr. Pacheco received the following awards for service: Global War on Terrorism service medal; Korean defense service medal; Army commendation medal; Army achievement medal; Army good conduct medal; National Defense service medal; Army service ribbon; overseas service ribbon; sharpshooter marksmanship qualification badge with rifle bar; Iraq campaign medal with campaign star; noncommissioned officer professional development ribbon; Army service ribbon; overseas service ribbon; Armed Forces Reserve medal with "M" device; NATO medal; Combat Action Badge; and driver and mechanic badge with mechanic clasp.

During his military service, Mr. Pacheco was exposed to traumatic incidents that have resulted in a mental health diagnosis of Post-Traumatic Stress Disorder (PTSD). In one incident, a truck in his convoy was struck with an improvised explosive device (IED), and Mr. Pacheco participated in the recovery of the vehicle. In another incident, Mr. Pacheco helped pull an Afghanistan National whose leg was crushed and trapped in the dash of an overturned fuel tank vehicle. Mr. Pacheco was awarded the Soldier's Medal for

heroism for lifesaving action in July 2012. This medal is the highest honor a soldier can receive for valor in a non-combat situation. Mr. Pacheco and another solider received a call to assist in a nearby accident. They worked to free the man trapped in the overturned truck with the imminent major threat of ignition due to spilled fuel and hanging batteries. In another incident, Mr. Pacheco was knocked down by an explosion of a suicide bomber while he was repairing a bridge. Soldiers suffered both physical and psychological trauma from this attack. Mr. Pacheco received the Combat Action Badge for this incident.

At the time of this case, Mr. Pacheco's PTSD condition was undiagnosed. The reason PTSD is relevant is because, for Mr. Pacheco, it involved unprovoked irritability with periods of violence; suspiciousness; depressed mood; suicidal ideation; disturbances of motivation and mood; anxiety; occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal); difficulty in establishing and maintaining effective work and social relationships; impaired impulse control; and chronic sleep impairment. At the time of this incident, Mr. Pacheco was assigned to supervise violent offenders with serious mental disorders. With the benefit of hindsight, it is obvious that Mr. Pacheco should not have worked in the corrections environment while suffering from undiagnosed and untreated PTSD. Since leaving CDCR, Mr. Pacheco has received help for his condition, and is no longer working in a field that would place him in a similar situation. The minimum sentence allowed under the terms of the plea agreement is 121 months. Accordingly, the defense requests a sentence of imprisonment of 121 months. This is based on his military service with the resulting emotional condition which contributed to his criminality, and his family ties and responsibilities.

*Family Ties and Responsibilities*

Mr. Pacheco has a very supportive family. His wife of 16 years wrote that he is a fun, loving, and outgoing person. She describes him as a thoughtful and caring person. He

**DEF. ARTURO PACHECO'S SENTENCING MEMO**

is very supportive of his family and friends, and is helpful. She confirms that Mr. Pacheco is remorseful for his conduct in his case, and that he is a completely different person now than when this case took place.

All three of his daughters wrote thoughtful letters of support to inform the Court about what a loving and caring father Mr. Pacheco is. He supports them financially and emotionally. He spends time with them, attends their sporting events, pushes them to be their best, and has taught them to take pride in what they do.

Many of his friends, former coworkers, employers, and commanding officers submitted letters of support. One of the most telling was from Captain Hicks, a former commanding officer. He felt fortunate to have Mr. Pacheco attached to his platoon on several missions. Captain Hicks described how on many of these missions they encountered enemy small arms fire, indirect missile fire, and improvised explosives. He described not only the physical but psychological trauma that the men in his platoon suffered when a suicide bomber tried to destroy the bridge on which they were working. Captain Hicks wrote that Mr. Pacheco "without hesitation responded as a person of the highest character and devotion to his fellow soldiers and the mission." All of the letters describe Mr. Pacheco as a kind, helpful, and responsible person.

### III. CONCLUSION

A prison sentence of 121 months is sufficient but not greater than necessary to achieve the goals of sentencing. The facts of this case occurred during 2016. He resigned from CDCR in 2018. Mr. Pacheco has been under pretrial supervision since November 25, 2020. He has not been arrested for any other offense and has complied with all the terms and conditions of his release. As documented by his family, friends, former coworkers, and former commanding officers, Mr. Pacheco has lived a law-abiding life. He has demonstrated that a prison sentence of not more than 121 months is sufficient.

Date: October 11, 2022

Respectfully submitted,
/s/ David D. Fischer
DAVID D. FISCHER
Attorney for Defendant
ARTURO PACHECO

**DEF. ARTURO PACHECO'S SENTENCING MEMO**